IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-2694-WJM-SKC

PHILIP BOATENG,

    Plaintiff

v.

CHIEF NICHOLAS METZ, in his official and individual capacity,
SERGEANT JEFFREY LONGNECKER, in his official and individual capacity,
AURORA POLICE DEPARTMENT, and
CITY OF AURORA,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND GRANTING AURORA'S MOTION TO DISMISS

    In this action, Plaintiff Philip Boateng ("Plaintiff") sues Defendants City of Aurora ("Aurora"), as well as two employees of the Aurora Police Department in their individual capacities, Chief Nicholas Metz ("Metz") and Sergeant Jeffrey Longnecker ("Longnecker") (together, "Individual Defendants"), for alleged violations of certain First, Fourth, and Fourteenth Amendment rights, as well as for malicious prosecution. (ECF No. 1.) Currently before the Court are the Individual Defendants' Motion to Dismiss and Aurora's Motion to Dismiss. (ECF Nos. 21 & 22.) For the reasons stated below, the Individual Defendants' Motion is granted in part and denied in part, and Aurora's Motion is granted.

### I. BACKGROUND

    The Court accepts the following allegations as true for purposes of resolving the

pending motions.  All paragraph references ("¶ __") are to Plaintiff's Amended Complaint ("Complaint").  (ECF No. 17.)

**A.     Impoundment of Plaintiff's Vehicle**

On November 12, 2017, Plaintiff drove his black BMW SUV bearing license plate QXK512 to work at his usual time, approximately 6:20 p.m.  He drove along his usual route, taking Potomac Street to Colfax Avenue to the University Hospital.  (¶¶ 14, 16.)  He parked his car in his usual lot, Parking Lot 4, at his usual time, 6:23 p.m.  (¶ 15.)  He walked into the University Hospital building and clocked into work at 6:28 p.m.  (¶ 16.)

At 6:26 p.m., after Plaintiff left his car but before he clocked into work, Longnecker and two other Aurora Police Department officers pulled into Parking Lot 4 and towed Plaintiff's vehicle.  (¶ 18.)  When parked, Plaintiff's vehicle was not obstructing traffic or interfering with highway maintenance, nor did it fall under any of the enumerated conditions under which an Aurora Police Department officer may tow a vehicle.  (¶ 40.)  The same day Plaintiff's vehicle was towed, Plaintiff was charged with three violations of Colorado law: careless driving, Colo. Rev. Stat. § 42-4-1402; speeding, *id.* § 42-4-1101; and eluding police, *id.* § 42-4-1413.  (¶ 37.)  Plaintiff contends that there was no lawful reason to charge him with these violations.  (¶ 50.)  Plaintiff was ordered to appear in Arapahoe County District Court on January 5, 2018.  (¶ 38.)

Plaintiff alleges that at 6:23 p.m. on the day of the towing, "Longnecker was in the 900–1000 block of Potomac Street and observed a blue BMW SUV with Colorado license plate KYX512."  (¶ 17.)  The import of this fact is not explained in the Complaint, but perhaps Plaintiff intends to suggest that Longnecker confused Plaintiff's vehicle with

2

the blue SUV.[1]

In any event, when Plaintiff left work after his night shift (it is unclear whether he left late on November 12 or on the morning of November 13), he could not find his car, and so called the University Police to report his car missing. (¶¶ 19–21.) The University Police investigated and advised Plaintiff that his car had been towed by Longnecker at 6:26 p.m. (¶ 21.)

Plaintiff called Longnecker and left several messages. (¶¶ 23–24.) Longnecker eventually returned Plaintiff's calls. (¶ 24.) During their conversation, Longnecker accused Plaintiff of "speeding, eluding a police officer, drinking and driving, being on drugs, and lying to [ ] Longnecker about all of these things." (¶ 25.) Plaintiff denied engaging in such behavior, and asked why his vehicle had been towed. (¶ 26.) Longnecker asked Plaintiff for identifying information, and Plaintiff provided his name, address, and date of birth. (¶¶ 27–28.) Plaintiff confirmed that the vehicle was his. (¶ 30.) Plaintiff declined to provide his social security number, regarding it as unnecessary. (¶ 27.) Longnecker stated that if Plaintiff refused to provide his social security number, Plaintiff's car would remain impounded until Longnecker returned to work the following week. (¶ 29.)

Longnecker then stated that the only way Plaintiff would be able to retrieve his vehicle before Longnecker's absence from the office was if Plaintiff met Longnecker that evening. (¶ 31.) Longnecker's police narrative stated that he impounded the

---

[1] In his Response to the Individual Defendants' Motion, Plaintiff claims that Longnecker's police narrative states that Plaintiff sped past him. (ECF No. 37 at 14.) This information is not included in the Complaint, and the Court will not consider it for purposes of the pending motions.

3

vehicle so that he could meet Plaintiff in person to verify his identity. (¶ 41.) Plaintiff was hesitant, and told Longnecker that "he wanted to speak to an attorney because he did not commit any crimes." (¶ 31.) Plaintiff inquired if there were other days he could retrieve his vehicle, but Longnecker "repeated that he would only release the vehicle if Plaintiff met with him when he was back at his desk the following week." (¶ 33.) Longnecker also stated that he would put a note in the system so that no other officer would release the vehicle to Plaintiff while Longnecker was out of the office. (¶ 34.)

On November 14, 2018, Plaintiff's counsel contacted Metz about releasing Plaintiff's vehicle. (¶ 43.) Counsel provided Metz with detailed information and argued that Longnecker's impoundment of the vehicle was improper. (¶ 44.) After that conversation, Aurora City Attorney Nancy Rogers contacted Plaintiff's counsel on behalf of Metz and advised that Metz would not release the car and was "not in the business of second-guessing his officers." (¶ 45.)

On December 6, 2017, an Aurora municipal judge found that the impound of Plaintiff's vehicle was improper, and ordered the car be released. (¶ 49.) On May 29, 2018, the Arapahoe County District Attorney's Office dismissed all charges against Plaintiff. (¶ 51.) Plaintiff claims that the charges were dismissed after a "review of the evidence provided by Defendant Longnecker," and that the dismissal "reflect[ed] a prosecutorial judgment that the case could not be proven beyond a reasonable doubt." (*Id.*)

**B.    Allegations of Racial Profiling**

Plaintiff, who is African American, alleges that Longnecker wrongfully charged Plaintiff and impounded his vehicle because of his race. (¶¶ 52, 133.) He adds that

4

Metz and Aurora did not question Longnecker's actions because "Defendants have a history and unwritten policy of racially profiling Aurora citizens of color and wrongfully charging them or over-charging them with crimes" because of their race. (¶ 53.)

Plaintiff adds that Aurora has failed to properly train and supervise officers to avoid racially-biased policing, and has instead continually condoned and ratified officers' misconduct. (¶ 56.) In support, Plaintiff cites over a dozen claims alleging Aurora Police Department officer misconduct against persons of color, many of which settled for a sum of money. (ECF No. 17-1.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

A.     **Individual Defendants' Motion to Dismiss (ECF No. 22)**

Plaintiff asserts three claims against the Individual Defendants. Set forth in the sequence in which they will be addressed below, they are: (1) retaliation in violation of the First Amendment (Claim 2); (2) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (Claim 4); and (3) malicious prosecution (Claim 3). The Individual Defendants claim that qualified immunity protects them from liability on all claims asserted against them. (ECF No. 22.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). This Court has discretion to address the "clearly established" element before addressing whether a constitutional violation actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on

point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). Nonetheless, the clearly established prong

> involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. The Supreme Court has cautioned [lower] courts not to define clearly established law at a high level of generality, but to focus on whether the violative nature of particular conduct is clearly established.

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted). The Tenth Circuit has "adopted a sliding scale to determine when law is clearly established." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.*

1. Retaliation for Exercise of First Amendment Rights (Claim 2)

In general, a properly stated claim for retaliation for the exercise of First Amendment rights must include three elements: (1) the plaintiff was engaged in activity protected by the First Amendment; (2) the defendant's actions caused the plaintiff to suffer an injury that would reasonably have a chilling effect on the exercise of protected activity by a person of ordinary firmness; and (3) the defendant's action was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). The Tenth Circuit has clearly stated that the "right to retain and consult with an attorney

7

implicates clearly established First Amendment rights of association and free speech" and those rights are "violated when a police officer retaliates against an individual for seeking legal advice." McBeth v. Himes, 598 F.3d 708, 716–17 (10th Cir. 2010) (alterations incorporated and internal quotation marks omitted).

The "standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004). "[A]lthough the objective standard permits a plaintiff who perseveres despite governmental interference to bring suit, 'a trivial or de minimis injury will not support a retaliatory prosecution claim.'" Id. (quoting Poole v. Cnty. of Otero, 271 F.3d 955, 960 (10th Cir. 2001)).

The Individual Defendants contend that Plaintiff has failed to sufficiently allege a chilling effect, and that the alleged injury is *de minimus*.

### a. *Longnecker*

Plaintiff alleges that Longnecker retaliated against Plaintiff for exercising his First Amendment rights by unreasonably demanding to meet Plaintiff to verify his identity, and by refusing to allow another officer with greater availability to release the vehicle to Plaintiff. (¶¶ 35–36.) Plaintiff claims that he refused to provide Longnecker his social security number and declined to meet with Longnecker. (¶¶ 27, 31, 33.) Plaintiff also alleges that in response to his refusals, Longnecker stated that Plaintiff's car would remain impounded during Longnecker's week-long absence from the office and that Longnecker would add a note in the system so that no other officer would release the vehicle to Plaintiff. (¶¶ 33–34.) Finally, Plaintiff claims that as a result of Longnecker's actions, his vehicle was impounded for nearly three weeks until a court found that the impound of the vehicle was improper. (¶ 49.)

Plaintiff's alleged injury is not *de minimus*. Plaintiff used the vehicle for transportation to and from work, and, based on the facts alleged in the Complaint, was deprived of his vehicle for over three weeks. A vehicle is often a substantial asset and Plaintiff relied on his vehicle, at a minimum, for transportation to and from work. Under the circumstances, impounding Plaintiff's vehicle cannot be said to be a *de minimus* injury.

The Court also finds that Plaintiff has sufficiently alleged that Longnecker's behavior, as described in the Complaint, would have a chilling effect on the exercise of free speech. Apparently, had Plaintiff complied with Longnecker's demands, provided his social security number, and met with Longnecker in mid-November, his car would have been released from impound immediately. Longnecker also apparently told other officers not to release the car to Plaintiff, allegedly due to Plaintiff's refusal to comply with Longnecker's demands. Continuing to impound a vehicle for refusal to comply with officer demands could reasonably have a chilling effect on the willingness of a person of "ordinary firmness" to speak out and refuse to comply with allegedly baseless police demands. *See Shero*, 510 F.3d at 1204.

Moreover, given the alleged quid pro quo in which Longnecker engaged, Longnecker had notice that withholding a substantial asset, allegedly without probable cause, to pressure Plaintiff to act or speak without his attorney would have had the effect of discouraging the speech in which Plaintiff engaged. *McBeth*, 598 F.3d at 716–17. Accordingly, the Court finds that Longnecker is not entitled to qualified immunity on this claim at this stage of the litigation, and the Individual Defendants' Motion on this claim with respect to Longnecker is denied.

### b. *Metz*

Plaintiff does not allege that Metz engaged in any action in response to Plaintiff exercising his First Amendment rights. To the extent that Plaintiff attempts to allege his retaliation claim directly against Metz, Plaintiff has failed to plead facts to demonstrate that any of Metz's actions were motivated, much less "substantially motivated," in response to Plaintiff's exercise of his First Amendment rights.

If Plaintiff instead alleges a retaliation claim based on Metz's failure to supervise Longnecker, Plaintiff has likewise failed to state a claim. Supervisory officials may be held liable in their individual capacity. However, § 1983 does not allow claims against supervisors under a theory of *respondeat superior* liability. *Cox v. Glanz*, 800 F.3d 1231, 1248 n.9 (10th Cir. 2015). A § 1983 claim against a defendant is his personal capacity for supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id.* at 1248 (alterations incorporated). Thus, a plaintiff must show that a subordinate violated the Constitution and an affirmative link between the supervisor and the constitutional violation. *Id*. An "affirmative link" requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

Plaintiff fails to allege facts identifying the specific policies over which Metz possessed supervisory responsibility or demonstrating that Metz acted with a "constitutionally requisite state of mind." *See Cox*, 800 F.3d at 1249. Plaintiff has

therefore failed to state a claim against Metz for retaliation, and thus Metz is entitled to qualified immunity on the facts alleged. The Court dismisses the claim without prejudice.

### 2. Racial Discrimination/Equal Protection (Claim 4)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "In order to state a race-based equal protection claim, a plaintiff must sufficiently allege that the defendant was motivated by racial animus." *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010).

Plaintiff alleges that he is an African American; that "Longnecker chose to wrongfully charge Plaintiff and tow his car because of the color of Plaintiff's skin"; and that his "race was a motivating factor in the decisions to unconstitutionally seize Plaintiff's car and then maliciously prosecute Plaintiff with false charges." (¶¶ 17, 133, 135.) The problem with this assertion, however, is that Plaintiff at no point establishes what the Individual Defendants knew about Plaintiff's racial identity, or when the Individual Defendants knew it. The facts in the Complaint fail to support even an inference that Longnecker or Metz knew of Plaintiff's racial identity: Longnecker had Plaintiff's car towed after Plaintiff left his vehicle; Longnecker only spoke to Plaintiff on the phone; and Metz only spoke with Plaintiff's counsel. Although Plaintiff's Response to the Individual Defendants' Motion contains additional facts which suggest that Longnecker observed Plaintiff driving, the Response is attorney argument only, not

11

factual allegations contained in the Complaint. (ECF No. 37 at 14–15.) *See Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss.").

Absent any facts in the Complaint to suggest that the Individual Defendants were even aware of Plaintiff's race at the time of their actions, Plaintiff has failed to plead facts to support his racial discrimination claim. Longnecker and Metz are thus entitled to qualified immunity on this claim on the facts as pleaded. Accordingly, the Court dismisses this claim, although the dismissal will be without prejudice because Plaintiff may be able to amend his Complaint to add the facts necessary to support this claim.

3. Malicious Prosecution (Claim 3)

Plaintiff brings a § 1983 claim against Longnecker and Metz for malicious prosecution. In the Tenth Circuit, the elements of a malicious prosecution claim comprise at least the following: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) ("*Sanchez II*"), *cert. denied*, 137 S. Ct. 1372 (2017).

The Tenth Circuit also holds that "that the Fourth Amendment prohibits officers from knowingly or recklessly relying on false information to institute legal process when that process results in an unreasonable seizure." *Id*. at 754. The Tenth Circuit has never clearly stated where this requirement fits into the established elements of

malicious prosecution.[2]  This Court has generally treated knowing or reckless reliance on false information as a fact which, if proven, establishes the malice element.  See Sanchez v. Hartley, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) ("falsifying or omitting evidence knowingly and intentionally, or with reckless disregard for the truth is sufficient to establish malice in the context of malicious prosecution claims" (internal quotation marks omitted; alterations incorporated)) ("Sanchez I"); see also Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir. 1991); Grobecker v. Grundy, 2014 WL 3593513, at *8–9 (D. Colo. July 18, 2014).

Plaintiff's Response to the Individual Defendants' Motion clarifies that his malicious prosecution claim rests on both "the institution of the legal process" (presumably the charges filed against him) and "its favorable termination through voluntary dismissal under the Fourteenth Amendment," as well as the "unlawful seizure of his vehicle under the Fourth Amendment."  (ECF No. 37 at 11.)  Plaintiff thus argues that he can plead a claim for malicious prosecution under both the Fourth and Fourteenth Amendments.  (Id. at 11–12.)

The Tenth Circuit has "repeatedly recognized . . . that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'"  Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007) (citing Taylor v. Meacham, 82 F.3d

---

[2] One decision, for example, equivocally suggests that knowing or reckless reliance on false information is part of both the malice element and the probable cause element.  See Wilkins v. DeReyes, 528 F.3d 790, 799–801 (10th Cir. 2008) (analyzing the effect of an allegation that officers fabricated evidence under the heading "Existence of Fact Questions as to Malice," although going on to discuss the question mostly in terms of a reasonable basis to find probable cause).

1556, 1561 (10th Cir. 1996)). In *Becker*, the Tenth Circuit rejected a broader interpretation of Fourth Amendment seizure and held that a plaintiff who was "never arrested, incarcerated, or otherwise placed under the direct physical control of the state" was never "'seized' in the traditional sense." *Id.* at 915. It thus recognized that a "groundless charging decision may abuse the criminal process, but it does not, in and of itself, violate the Fourth Amendment absent a significant restriction on liberty." *Id.*; *see also Leon v. Summit Cnty.*, 755 F. App'x 790, 796 (10th Cir. 2018) (holding that a plaintiff failed to state a § 1983 malicious prosecution claim where she was merely issued a notice to appear in court for driving under the influence and was not arrested or imprisoned).

Plaintiff does not allege that he was arrested, incarcerated, or otherwise under physical control of Aurora. While he alleges that the charges against him were "false" (*see* ¶ 114), he does not allege any facts supporting other "significant restriction on [his] liberty." *Becker*, 494 F.3d at 915. Absent such allegations, Plaintiff fails to state a claim against Longnecker or Metz for malicious prosecution. The Court will therefore dismiss Plaintiff's malicious prosecution claims based on the allegedly unconstitutional seizure of his person in violation of the Fourth Amendment, but without prejudice.

In *Becker*, the Tenth Circuit also seemingly acknowledged that unreasonable seizure of an individual's property in violation of the Fourth Amendment could form the basis for a malicious prosecution claim under § 1983. *Becker*, 494 F.3d at 916.[3] Thus,

---

[3] While the Tenth Circuit in *Becker* analyzed the plaintiff's claim under the heading "seizure of property," the Court notes that what the Tenth Circuit described is more accurately an alleged unreasonable *search* of property, not a seizure. *See Becker*, 494 F.3d at 916–17.

14

although it is difficult to imagine what it means to maliciously prosecute property, apparently, Plaintiff may bring a malicious prosecution claim for unreasonable seizure of property. Plaintiff has failed to allege sufficient facts to show that Longnecker or Metz acted with malice (or knowingly or recklessly relied on false information) during the initial seizure or the continued seizure after Plaintiff contacted the Individual Defendants. Plaintiff has also failed to allege facts to show that the action against the vehicle (namely, its seizure) terminated in favor of Plaintiff.

The Court questions in what circumstances a plaintiff could show that an action against unreasonably seized property could terminate in favor of the plaintiff. However, because Plaintiff's briefing suggests that there are additional facts which could support elements of his claim, the Court dismisses the claim without prejudice. (*See, e.g.*, ECF No. 37 at 3–5.) In doing so, the Court also notes that Plaintiff may have overlooked a more straightforward claim: unreasonable seizure of the vehicle under the Fourth Amendment. *See Stanley v. Gallegos*, 2018 WL 1230485 at *10 (D.N.M. Mar. 8, 2018); *Crumpton v. Finnin*, 2008 WL 4452162, at *4 (D. Colo. Sept. 30, 2008).

Finally, Plaintiff also attempts to allege a malicious prosecution claim under the Fourteenth Amendment. In theory, a § 1983 malicious prosecution claim may also be based deprivation of procedural due process in violation of the Fourteenth Amendment. *Sanchez II*, 810 F.3d at 755; *see Becker*, 494 F.3d at 918–19 (concluding that a malicious prosecution claim may arise under the Fourteenth Amendment for violations of procedural due process but not substantive due process). To the extent that Plaintiff's claim arises out of his substantive due process interest in being free from prosecution without probable cause, it is governed by the Fourth Amendment, not the

15

Fourteenth Amendment. *See Becker*, 494 F.3d at 918; *see Sanchez II*, 810 F.3d at 757 (seizures of persons "whether they are imposed with or without legal process . . . implicate the Fourth Amendment").

To the extent that Plaintiff alleges that additional process was required prior to impounding the vehicle, Plaintiff has failed to cite any clearly established law that would have put Longnecker or Metz on notice that their actions could render them liable for a malicious protection claim under § 1983 based on alleged Fourteenth Amendment procedural due process violations. Moreover, the Tenth Circuit has held that if "a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation," *e.g.*, an officer impounding a vehicle without probable cause, "then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014). In *Myers*, where the plaintiff alleged that the defendant "conjured up facts to create the illusion of probable cause," the court found that defendant's lawlessness could not have been anticipated, but a "post-deprivation malicious-prosecution claim serves as an effective antidote" and "Colorado law provides that remedy." *Id.* Thus, as in *Myers*, to the extent that Plaintiff's § 1983 malicious prosecution claim based on a deprivation of procedural due process under the Fourteenth Amendment is premised on Longnecker impounding the vehicle without due process, Plaintiff's remedy is a state law malicious prosecution claim, not a § 1983 claim. Because no amount or degree of amendment could remedy this pleading deficiency, Plaintiff's malicious prosecution claim based on a Fourteenth Amendment violation is dismissed with prejudice.

**B.      Aurora's Motion to Dismiss (ECF No. 21)**

Plaintiff asserts two claims against Aurora: (1) a *Monell* claim alleging that the Individual Defendants constitutional violations were driven by an Aurora municipal policy or custom (Claim 1); and (2) malicious prosecution (Claim 3).

    1.      *Monell* Claim (Claim 1)

Under *Monell v. Department of Social Services*, a municipality can be liable under 42 U.S.C. § 1983 for damages only when the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury."  436 U.S. 658, 694 (1978).  "A plaintiff suing a municipality under Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010) (internal quotation marks omitted); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986) ("'Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" (quoting *Monell*, 436 U.S. at 691)).  A municipal policy or custom may be "(1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).

17

As discussed above, Plaintiff fails to state a claim for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Nor does Plaintiff allege that any other Aurora employee not named in the Complaint committed such a constitutional violation. Plaintiff therefore fails to state a claim for violation of the Equal Protection Clause against Aurora because he has not pled facts to show that any employee committed a constitutional violation. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

Plaintiff also fails to state a *Monell* claim against Aurora for First Amendment retaliation. Plaintiff does state a claim against Longnecker for retaliating against him in violation of his First Amendment rights, thereby satisfying the first element of a *Monell* claim against Aurora. However, Plaintiff does not allege that Longnecker's retaliatory actions were the result of a municipal policy or custom, or failure to supervise or train employees. Instead, all of Plaintiff's allegations regarding Aurora's policies or customs address racially-biased policing by the Aurora Police Department. Absent any allegations that Longnecker's alleged retaliation stemmed from a municipal policy or custom, Plaintiff fails to state a *Monell* claim against Aurora for First Amendment retaliation. Accordingly, the Court dismisses Plaintiff's *Monell* claim against Aurora without prejudice.

2. <u>Malicious Prosecution (Claim 3)</u>

Plaintiff also brings a malicious prosecution claim against Aurora. In his Response to Aurora's Motion, Plaintiff argues that he has properly pled a malicious prosecution claim because "he enumerated the unlawfulness of the seizure of his

vehicle" and the unlawfulness of "institution and continuation of the legal process against him."  (ECF No. 33 at 12.)

As discussed above, under *Monell*, Aurora "cannot be held liable *solely* because it employs a tortfeasor."  436 U.S. at 693 (emphasis in original).  Therefore, to the extent Plaintiff seeks to hold Aurora vicariously liable for the Individual Defendants' malicious prosecution under a *respondeat superior* theory, Plaintiff's claims fail.  Moreover, the Complaint fails to adequately plead that Aurora has a policy, practice, or custom of allowing its officers to maliciously prosecute individuals or prosecute individuals without probable cause.  Accordingly, Plaintiff's claim against Aurora for malicious prosecution is dismissed without prejudice.

## IV. CONCLUSION

The Court today finds that Plaintiff has, for the most part, failed to state a claim against the Individual Defendants on the facts alleged, thus entitling the Individual Defendants to qualified immunity on the facts as alleged in the Complaint.  The Court also dismisses the claims against Aurora for failure to state a claim.  Because the majority of Plaintiff's claims may be salvaged via a second amended complaint which plausibly cures the pleading deficiencies in the current complaint identified in this Order, the Court dismisses most claims without prejudice to refiling, and grants Plaintiff leave to amend.

For the reasons set forth above, the Court ORDERS as follows:

1. The Individual Defendants' Motion to Dismiss (ECF No. 22) is GRANTED IN PART AND DENIED IN PART;

2. The Individual Defendants' Motion to Dismiss is GRANTED as follows:

a. Claim 2 is DISMISSED WITHOUT PREJUDICE only as to Defendant Nicholas Metz;

b. Claim 3 is DISMISSED WITHOUT PREJUDICE; and

c. Claim 4 is DISMISSED WITHOUT PREJUDICE for claims based on the Fourth Amendment, and DISMISSED WITH PREJUDICE for those based on the Fourteenth Amendment;

3. The balance of the Individual Defendants' Motion to Dismiss is DENIED;

4. Defendant City of Aurora's Motion to Dismiss (ECF No. 21) is GRANTED in its entirety, and all claims against Aurora are DISMISSED WITHOUT PREJUDICE;

5. Plaintiff is granted leave to file a Second Amended Complaint consistent with the terms of this Order on or before **October 21, 2019**; and

6. The case REMAINS STAYED until further order of Court.

Dated this 30th day of September, 2019.

BY THE COURT:

William J. Martínez
United States District Judge